SOUTHALL, APPELLANT, *v.* GABEL, APPELLEE.

(No. 71-132—Decided August 24, 1971.)

*Mr. George W. Gross,* for appellant.

*Messrs. Crabbe, Newlon, Potts, Schmidt, Brown & Jones, Mr. Charles E. Brown* and *Mr. Glenn B. Redick,* for appellee.

TROOP, P. J. This appeal is from a judgment of the Franklin County Municipal Court entered February 22, 1971, at which time the written decision of the trial court was also filed. A motion for a new trial was overruled March 20, 1971. The judgment was favorable to the defendant, Albert A. Gabel, a doctor of veterinary medicine, and against the plaintiff, Shirley Southall, the owner of a three-year-old colt named "Pribal."

Minimum facts only are necessary to this review. Pribal was taken to the Ohio State University Veterinary Clinic because of lameness, and an operation was performed on his left front knee under the direction of the defendant. On October 17, 1967, the horse was mistakenly delivered to a thoroughbred farm at Sunbury, Ohio, whereas the clinic had been instructed to deliver the horse to Hilliard. In an effort to correct the error the colt was again loaded in a van to be returned to Columbus. Enroute, the animal became disturbed and displayed symptoms characterized at one point as a "van fit." He was finally returned to the clinic on October 20, 1967, where he remained for treatment until December 13, 1967. The horse was ultimately destroyed August 24, 1969.

Plaintiff's petition, paragraph six, alleges negligence on the part of the defendant (1) in moving the colt in a van so soon after surgery, and (2) in not properly preparing the colt's legs for transit with the use of proper standing and shipping bandages.

Defendant demurred to plaintiff's petition on the ground that the action was barred under R. C. 2305.11, the act of the defendant being one to be regarded as "malpractice" and therefore the action was required to be brought within one year after the termination of treatment. The demurrer was overruled because, said the court, "the petition is based on negligence for the transporting rather than malpractice."

The case came to trial before the court without a jury, the defendant having interposed an answer alleging, among other things, the defense raised by his demurrer that the action, filed September 16, 1969, was barred by the statute of limitations.

The written decision of the trial court, filed incident to the judgment, provides, rather succinctly, the central point of this review. The court found that "treatments" for the horse continued to December 13, 1967, which is an important date because, most generally under Ohio law, that is the date upon which the one year provided as the limitation, in R. C. 2305 11, begins to run. The court said that was the plaintiff's own statement in her petition, paragraph five. The decision says also, as follows: "* * * The court does conclude that the relation of plaintiff and defendant was that of patient and physician. * * *"
And, the court adds, that this patient-physician relationship continued "until the colt was taken from the clinic" by the plaintiff.

The very nub of the whole matter appears in the pronouncement of the court, as follows:

"* * * Therefore, any act or acts of negligence on the part of the defendant would fall within the legal concept of malpractice. * * *"

Appellant suggests two assignments of error, which will be considered as one since the first relates to "treatment" and the other objects to the finding of the court as to the existence of malpractice.

The trial court cites and quotes from a nisi prius case in Ashtabula County in the decision noted. *Storozuk* v. *W. A. Butler Co.* (1964), 3 Ohio Misc. 60, 203 N. E. 2d 511, does hold that " 'malpractice,' within one-year statute of limitations, includes practice of veterinary medicine."

A decision by the Ohio Supreme Court, in the same year as *Storozuk*, must, however, be noted. In *Richardson* v. *Doe* (1964), 176 Ohio St. 370, the court was also concerned with the application of the one-year statute of limitations. Licensed nurses employed by the hospital were involved. They permitted a patient to hemorrhage for eight hours after discovery without notifying her physician. The syllabus rule reads as follows:

"A negligence action against a hospital based on the doctrine of *respondeat superior* for the negligence of a nurse is subject to the two-year statute of limitations for bodily-injury actions."

298

The propositions by the court, at page 372, are more pertinent to this discussion than the rule announced. The court points out that at the time the predecessor section to R. C. 2305.11 was amended to include malpractice within the one-year statute of limitations, "the common meaning and legal definition of the term, 'malpractice,' was limited to the professional misconduct of members of the medical profession and attorneys." And, the court then says, "Today, the term, malpractice, is sometimes used loosely to refer to the negligence of a member of any professional group. However, legally and technically, it is still subject to the limited common-law definition."

The very limited scope of the definition furnished by the Supreme Court seems to require the conclusion that other professional persons are not included, i e., a veterinarian, which would overrule the finding of the nisi prius court in *Storozuk*, *supra*.

It is noted that the Third District Court of Appeals in a decision in *Cook* v. *Yager* (1968), 13 Ohio App. 2d 1, appears to have enlarged the scope of the definition in *Richardson* to include a "dentist." The concurring opinion of Judge Herbert, now Justice Herbert, which suggests that a dental oral surgeon and a medical oral surgeon "should be equated" for the purpose of reviewing the petition before the court, as the appellant urged, may display a reluctance to enlarge the Supreme Court concept. The majority puts it, however, that the law of malpractice in Ohio "in its general application to physicians also has general application to dentists."

The very essence of "malpractice" is the patient-physician relationship upon which the trial court relied in this case. The conclusion of the court is a bit strained in this case when it is noted that it was the left front knee of the colt "Pribal" that required surgery and not that of his owner, the plaintiff, Mrs. Southall. The patient-physician relationship was that between the colt and Dr. Gabel, the defendant. That, in the slang vernacular, is "a horse of a different color."

Two Supreme Court decisions emphasize this matter

of the basic relationship. One of the decisions is cited by the plaintiff. In *Corpman* v. *Boyer* (1960), 171 Ohio St. 233, a husband filed an action for damages, seeking to recover for medical services furnished his wife, and for loss of consortium and loss of services, the wife having been injured by the "malpractice" of a physician. The court held that the action was not one in malpractice, and specifically held that the one-year statute of limitations did not apply.

The other decision is found in *Klema* v. *St. Elizabeth's Hospital of Youngstown* (1960), 170 Ohio St. 519. An anesthetist, employed by the defendant hospital, erred seriously enough to have produced the death of the patient. A wrongful death action followed. The Supreme Court held that the action could not be defeated by the one-year statute of limitations, which the court said would have been applicable if the patient had survived and had himself sought damages for injuries done.

If Pribal had survived, and had attempted recovery for an impaired leg or disposition, the suggestion is that the one-year statute of limitations would have applied, but it does not apply to an action brought by his owner for negligence in his treatment or handling. Such an action parallels that for wrongful death in the *Klema* case.

Until the Supreme Court speaks, veterinarians are not included in the definition of malpractice.

The trial court's decision overruling the demurrer to plaintiff's petition was correct, "the petition is based on negligence for the transporting rather than malpractice."

The judgment of the trial court is reversed and the cause remanded for further proceedings according to law and in conformity to this decision.

*Judgment reversed.*

WHITESIDE and REILLY, JJ., concur.